IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CRAIG CASTLE and ADAM YORK,<br><br>                    Plaintiffs,<br>v.<br><br>JAMES JONES, an individual; ANTHONY REDMOND, an individual; MEMPHIS PASSIVE, LLC, a Tennessee limited liability company; MEMPHIS PASSIVE 1, LLC, a Tennessee limited liability company; MEMPHIS PASSIVE 7, LLC, a Tennessee limited liability company; KEYDIA HOLDINGS, LLC, a Florida limited liability company; FORTITUDE HOME SERVICES, DOES I–XX and ROE COMPANIES I-XXX ,<br>                    Defendants,<br>-and-<br><br>MEMPHIS PASSIVE DUNLAP, LLC, a Tennessee limited liability company,<br><br>                    Nominal Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br><br><br>Case No. 2:23-cv-444-TS-JCB<br><br>Judge Ted Stewart<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim.[1] The Court will grant the Motion. As discussed below, while the Court can exercise personal jurisdiction over Defendants under the Securities and Exchange Act ("Exchange Act"), Plaintiffs fail to allege sufficient facts to state a plausible claim under the Act. Further, the Court declines to exercise pendent personal jurisdiction over the remaining claims and will dismiss the remaining claims without prejudice.

---

[1] Docket No. 34.

## I. BACKGROUND

Craig Castle and Adam York ("Plaintiffs") filed this suit against James Jones; Anthony Redmond; Memphis Passive LLC; Memphis Passive 1; LLC, Memphis Passive 7, LLC; Keydia Holdings, LLC; Fortitude Home Services; Does I-XX; Roe Companies I-XXX; and Memphis Passive Dunlap, LLC (collectively "Defendants") for alleged actions arising from an investment in property in Tennessee.[2] Plaintiffs assert claims for violation of the Exchange Act, breach of fiduciary duty, waste, unjust enrichment, conversion, constructive trust, and fraudulent conveyance.[3]

Both Plaintiffs reside in Utah and assert that Jones and Redmond ("Director Defendants") convinced them to "jointly form a business for the purpose of purchasing, rehabilitating, and then either selling or renting real estate"[4] in Tennessee. Jones resides in Tennessee, and Redmond resides in either Tennessee or Florida. The remaining Defendants are Tennessee and Florida limited liability companies, with the exception of Fortitude Home Services ("Fortitude"), the location of which is unknown.[5]

After initial discussions, Director Defendants and Plaintiffs agreed on a rehabilitation project in Tennessee and Director Defendants formed Memphis Passive Dunlap, LLC (the "Company")[6] under the laws of Tennessee with its principal place of business in Tennessee.[7] Plaintiffs allege that in inducing them to invest in the project, Defendant Directors made multiple

---

[2] Docket No. 32.

[3] *Id.* at 24–34.

[4] *Id.* at 2.

[5] *Id.* ¶¶ 19–23.

[6] *Id.* ¶ 45.

[7] *Id.* ¶¶ 33, 39.

statements and representations, including that: the total investment cost would be $720,000;[8] the entire process would take only six months;[9] the value of the property after completion would be over $1 million with a passive monthly income of $4,180.00;[10] and Director Defendants were experienced in these types of rehabilitation projects.[11]

The Company's Operating Agreement listed Director Defendants and Plaintiffs as each having 25% ownership of the Company and listed Plaintiffs as providing all capital contributions. It further charged Jones with rehabilitation and management of the properties owned by the LLC, and charged Redmond with assisting Jones with management.[12] Castle contributed $340,000 in cash and York contributed $60,000 in cash.[13] Plaintiffs assert that their investments in the Company were securities.[14]

In early March 2022, approximately eleven days after closing on the property, Jones allegedly began transferring money from the Company's account to Defendant Fortitude Home Services, a company Jones owned and/or controlled.[15] Plaintiffs allege that in April 2022, Jones transferred funds from the Company's account to Fortitude, Defendant Memphis Passive 7, LLC ("MP7"), another company owned by Director Defendants, and nonparty Memphis Passive 284.[16] Plaintiffs allege that in May 2022, Jones transferred additional funds to Fortitude and MP7

---

[8] *Id.* ¶ 40.

[9] *Id.*

[10] *Id.* ¶ 41.

[11] *Id.* ¶ 42.

[12] *Id.* ¶ 49.

[13] *Id.* ¶ 53.

[14] *Id.* ¶ 101.

[15] *Id.* ¶¶ 23, 58, 61.

[16] *Id.* ¶ 63.

from the Company's account.[17] Plaintiffs allege that payments and credits continued to appear on the Company's bank account and the withdrawal amount would frequently be placed back into the account for the same amount.[18] However, there were also some unreturned withdrawals,[19] although the amounts of unreturned withdrawals are unclear. When Plaintiffs questioned Director Defendants about the credits and withdrawals, Plaintiffs allege Director Defendants did not provide a satisfactory explanation.[20]

In September 2022, the city placed a stop work order on the property for failure to obtain required construction permits.[21] Plaintiffs allege they were never fully informed about the order and that Director Defendants failed to take any action to lift it. Rather, they continued to reconstruct parts of the property in defiance of the stop work order, causing the city to enhance damages and enforce the order in court.[22] During this time, Jones continued to solicit additional cash contributions from Plaintiffs.[23] Plaintiffs allege that they made the additional investment, although it is unclear when they did so and how much they invested.[24] As of the date of the filing of the Amended Complaint, the stop work order was still in effect.[25]

---

[17] *Id.* ¶ 65.

[18] *Id.* ¶ 66.

[19] *Id.*

[20] *Id.*

[21] *Id.* ¶¶ 69–70.

[22] *Id.* ¶¶ 71–72.

[23] *Id.* ¶¶ 4, 76.

[24] *Id.* ¶ 108. The Amended Complaint states that Castle contributed an additional $115,000 in March 2022. It is unclear if Plaintiffs characterize this as an additional contribution. *Id.* ¶ 61.

[25] *Id.* ¶ 73.

Plaintiffs also allege that Jones and Redmond forged their signatures on various documents, including a document stating that Redmond had 70% ownership in the Company and a guaranty that cross collateralized the Company's assets with other companies owned by Jones and/or Redmond, including Defendant Keydia Holdings, LLC, owned by Redmond.[26]

Defendants filed this Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Rules 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act[27] ("PLSRA") for failure to state a claim upon which relief can be granted. Having fully reviewed the parties' briefing and finding that oral argument would not be materially helpful,[28] the Court now rules on the Motion to Dismiss.

## II. DISCUSSION

Defendants assert that the Amended Complaint fails to establish personal jurisdiction and fails to state a claim for violation of the Exchange Act. The Court will address both issues in turn below. However, before reaching those arguments, the Court must first review subject matter jurisdiction.

### A. Subject matter jurisdiction

Though not raised by either party, the Court has an independent obligation to determine whether subject matter jurisdiction exists.[29] Plaintiffs' Amended Complaint invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). "[D]iversity jurisdiction exists only if no

---

[26] *Id.* ¶¶ 77–80.

[27] 15 U.S.C. § 78u-4.

[28] *See* DUCivR 7-1(g).

[29] *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

plaintiff and no defendant are citizens of the same state[.]"[30] For diversity jurisdiction purposes, a limited liability company "takes the citizenship of all its members."[31] That means that an LLC "is a citizen of each state or foreign country of which any of its [members] is a citizen."[32]

Here, Plaintiffs state that they are citizens of Utah,[33] and name Memphis Passive Dunlap, LLC as a Defendant.[34] Plaintiffs state that the members of that LLC include themselves as well as the Director Defendants.[35] Because Plaintiffs are members of the LLC, the LLC is a citizen of Utah, among other places. There is not complete diversity, and Plaintiffs' attempt to invoke the Court's diversity jurisdiction fails.[36]

B. Personal jurisdiction

Plaintiffs bring both federal and state claims. While Plaintiffs assert only diversity jurisdiction in the Amended Complaint, this case also involves federal question jurisdiction arising under the claim for violation of the Exchange Act. "A claim based on a violation of a federal statute is a claim arising under federal law within the meaning of [federal question

---

[30] *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

[31] *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015).

[32] *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004).

[33] Docket No. 41 ¶¶ 13–14.

[34] While Plaintiffs name Memphis Passive Dunlap, LLC as a "nominal" Defendant, its citizenship is still considered in determining diversity in shareholder derivative actions. *See Lenz v. Assoc. Inns & Restaurants Co.*, 833 F. Supp. 362, 378 (S.D.N.Y. 1993) (stating that "in a derivative action brought by a limited partner, the limited partnership is an indispensable party.") (citations omitted).

[35] Docket No. 35 ¶ 18; *see also* Docket No. 32-1 (identifying Plaintiffs as members in the Memphis Passive Dunlap LLC Operating Agreement).

[36] Even if Memphis Passive Dunlap, LLC was realigned as a plaintiff, diversity would still be destroyed because the Director Defendants are named members, making Memphis Passive Dunlap, LLC a citizen of Tennessee and/or Florida.

jurisdiction]."[37] The parties fail to appreciate this distinction and as a result, wrongly focus their arguments only on whether Defendants had systematic and continuous contact to support general jurisdiction or sufficient minimum contacts to support specific jurisdiction, which are not the applicable tests here.

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'"[38] Plaintiffs' first claim asserts a violation of the Exchange Act and Rule 10(b)5.[39] The Exchange Act authorizes nationwide service of process,[40] therefore, the Court must next determine whether exercising jurisdiction over Defendants comports with due process.

"[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."[41] "To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate 'that his liberty interest actually have been infringed.'"[42] "The burden is on the defendant to show that the exercise of jurisdiction in the

---

[37] *Haas v. Wiedboldt Stores, Inc.*, 725 F.2d 71, 73 (7th Cir. 1984); 28 U.S.C. § 1331 ("The district court shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.").

[38] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

[39] Docket No. 32, at 24.

[40] 15 U.S.C. § 78aa.

[41] *Peay*, 205 F.3d at 1212.

[42] *Id.* (quoting *Republic of Panama*, 119 F.3d at 946).

chosen forum will 'make litigation so gravely difficult and inconvenient that [the defendant] unfairly is at a severe disadvantage in comparison to [their] opponent.'"[43]

In determining whether Defendants have met this burden, the Court considers the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and extent to which the discovery proceedings will take place outside the state of defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[44]

"[I]n this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened,"[45] and "it is only in highly unusual cases that inconvenience will rise to the level of constitutional concern."[46]

Based on these factors, Defendants have not shown "constitutionally significant inconvenience" to litigate this case in the District of Utah. Turning to the first factor, Director Defendants reside in Tennessee and/or Florida and the remaining Defendants have members who reside in either Florida or Tennessee. It also appears that Defendants have had minimal to no contact with Utah other than those contacts with Plaintiffs, non-parties Adam Johnson and Caleb Failes, and three other unnamed investors. This factor weighs in Defendants' favor.

---

[43] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[44] *Id.*

[45] *Id.* at 1213 (internal quotation marks and citation omitted).

[46] *Id.* at 1212 (quoting *Republic of Panama*, 199 F.3d at 947).

Regarding the next factor, Defendants have not suggested that they lack resources to access Utah counsel and have in fact obtained Utah counsel.[47] "Although Utah might be some distance from [Tennessee and Florida], 'modern means of communication and transportation greatly reduce the significance of this physical burden.'"[48] In considering judicial economy, neither the court in Utah nor Tennessee or Florida would be particularly burdened than the other if it were to take on this case. The fourth factor regarding situs of discovery is also even as it is foreseeable that records will be located in both Utah and Tennessee, and depositions will take place in both places. The final factor evaluates the nature of the regulated activity in question and its impact beyond the borders of defendant's state. Defendants sought investment from outside of Tennessee or Florida for projects and limited liability companies located in Tennessee. Therefore, this factor weighs slightly in Defendants' favor. Considering each of these factors, the Court finds that exercising jurisdiction would not create a constitutionally significant inconvenience.

Because Defendants have not met their initial burden to establish undue convenience, the Court finds that exercise of personal jurisdiction over Defendants comports with due process.[49]

---

[47] *See Michael L. v. Anthem Blue Cross & Blue Shield*, No. 4:21-cv-32-DN-PK, 2021 WL 5051557, at *3 (D. Utah Oct. 29, 2021); *Howard W. v. Providence Health Plan*, No. 2:20-CV-463 JNP, 2021 WL 4459856, at *3 (D. Utah Sept. 29, 2021).

[48] *Howard W.*, 2021 WL 4459856, at *3 (quoting *Peay*, 205 F.3d at 1213).

[49] *See Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 2:17-CV-1236 TS, 2018 WL 1406600, at *3–4 (D. Utah Mar. 19, 2018) (finding that although all but one of the undue convenience factors weighed in some degree in favor of inconvenience, "in light of the broad standard set forth [by the Tenth Circuit], and despite the factors showing some inconvenience to Defendants . . . Defendants failed to show that their inconvenience rises to the level of constitutional concern.").

C. Failure to state a claim

Defendants assert that the Amended Complaint fails to state a claim for violation of the Exchange Act. When evaluating a complaint under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[50]

Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[51] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[52] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[53]

Further, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss."[54] "The inquiry . . . is whether *all* the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."[55]

Defendants assert that the Amended Complaint fails to state a claim under Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Section 10(b)

---

[50] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.").

[51] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[53] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[54] *Tellabs, Inc.*, 551 U.S. at 322.

[55] *Id.* at 322–23.

and Rule 10-5 "prohibit making any material misstatement or omission in connection with the purchase or sale of any security."[56] To establish a violation under Section 10(b) and Rule 10b-5, a plaintiff must prove the following:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.[57]

In addition, a claim under Section 10(b) is governed by the Private Securities Litigation Reform Act ("PSLRA") which imposes a heightened standard for pleading the element of scienter.[58] Under the PSLRA, a plaintiff must, "with respect to each act or omission alleged, state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind."[59]

Turning to the first element, the Amended Complaint alleges that Director Defendants made the following misleading statements of material fact:

> - The Director Defendants were experts in rehabilitation of properties and management, and they had successfully rehabilitated millions of dollars of real estate without any losses.[60]
> - The project would be completed under budget within six months.[61]

---

[56] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

[57] *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1200 (10th Cir. 2015) (emphasis omitted); *see also In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1136 (10th Cir. 2009) (adopting the same elements for violation of a private securities action but parsing the fifth element into "(5) that the plaintiff suffered an economic loss; and (6) that the material misrepresentation was the cause of that loss."); *see also In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).

[58] 15 U.S.C § 78u–4(b)(2).

[59] *In re Level* 3, 667 F.3d at 1333.

[60] Docket No. 32 ¶ 94.

[61] *Id.* ¶¶ 94–95.

- When the project was completed, Plaintiffs would receive several thousand dollars per months as profit distributions from the Company and the real estate would be worth over one million dollars.[62]
- Any funds invested would be used solely to complete the Company's project and Director Defendants would only take money from the Company once the project was completed and had positive cash flow.[63]

The Amended Complaint goes on state that these statements were untrue because

Director Defendants had previously suffered losses in their real estate investments due, in part, to misappropriation of Company funds; the permitting process was lengthy and would not allow for construction to be completed within six months; and the investment was worth less than $300,000 because Director Defendants intended to transfer money from the Company to their other entities.[64]

Under the PSLRA, a complaint must "specify each statement alleged to have been misleading [and] the reasons why the statement is misleading."[65] Defendants contend that these allegations fail to meet this specificity requirement. The Court does not agree and finds that these statements are sufficiently specific in identifying the time, place, and contents of the statements, as well as the identity of the person making the representation.[66] Although they lump Defendants Redmond and Jones together as Director Defendants, the pleadings do not constitute "group pleading" as Defendants assert.[67] Defendants also argue that the misleading statements turn on

---

[62] *Id.* ¶ 96.

[63] *Id.* ¶ 97.

[64] *Id.* ¶ 102.

[65] *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1)).

[66] *See Davis v. Skullcandy, Inc.*, No. 2:16-cv-00121-RJS-PMW, 2018 WL 1415192, at *3 (D. Utah Mar. 21, 2018).

[67] *Winer Family Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007) ("The group pleading doctrine is a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations. Under the doctrine, where defendants are insiders

corporate mismanagement and self-dealing. Federal securities law cannot be used to redress acts of internal corporate mismanagement and breach of fiduciary duty.[68] "This distinction has admittedly proven somewhat difficult to apply in practice."[69] However, the Court need not address this argument because the claim fails for the reasons discussed below.

Second, it is uncontested that the Plaintiffs' investments were securities, satisfying the second element.

Third, Plaintiffs must plead that Defendants acted with scienter. "Scienter is 'a mental state embracing (1) intent to deceive, manipulate, or defraud,' or (2) recklessness."[70] Intent to deceive, manipulate, or defraud "is easily identified since it encompasses deliberate illegal behavior."[71] To demonstrate recklessness, a plaintiff must demonstrate "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[72] "[A]llegations of negligence or even gross negligence fall 'below the high threshold for liability under Section 10(b) of the Exchange Act."[73]

---

with such control or involvement, their specific connection to fraudulent statements in group-published documents is unnecessary.").

[68] *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977).

[69] *Melnyk v. Consonus, Inc.*, No. 2:03-CV-00528 DB, 2005 WL 2263950, at *5 (D. Utah Sept. 12, 2005) (quoting *Kas v. Fin. Gen. Bankshares, Inc.*, 796 F.2d 508, 513 (D.C. Cir. 1986)).

[70] *Smallen*, 950 F.3d at 1304 (quoting *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236–37 (10th Cir. 2016)).

[71] *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001) (internal quotation marks and citation omitted).

[72] *In re Zagg*, 797 F.3d at 1201 (internal quotation marks and citation omitted).

[73] *Smallen*, 950 F.3d at 1305 (quoting *Dronsejko v. Thornton*, 632 F.3d 658, 668 (10th Cir. 2011)).

"Although an inference of scienter 'need not be irrefutable, *i.e.*, of the smoking-gun genre, it must be more than merely plausible or reasonable.'"[74] "Because the inference must be 'powerful or cogent' not only in its own right but 'strong in light of other explanations,' we must 'consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.'"[75] Accordingly, a claim will survive dismissal "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[76]

Plaintiffs argue that the totality of the allegations establish scienter. They assert that at the time they made the statements, Director Defendants knew it was unrealistic to complete the project in six months, knew they were not experts in rehabilitation and purchase of properties, knew they would take invested capital for their own purposes, and knew they would ask Plaintiffs for additional capital.[77] Further, they assert that Director Defendants knew that the investment as a whole was worth less because they planned on diverting funds for their own purposes. Plaintiffs contend that the strongest inference can be drawn from the allegation that Director Defendants "planned to and actually did, take funds that were contributed from Plaintiffs" and directed the money to their other entities.[78] The Amended Complaint asserts that when Jones asked for additional funds, after Plaintiffs' initial investment, he overinflated the

---

[74] *Id.* (quoting *Tellabs*, 551 U.S. at 324).

[75] *Id.* (quoting *Tellabs*, 551 U.S. at 323–24).

[76] *Tellabs*, 551 U.S. at 324; *see also id.* at 326 ("In sum, the reviewing court must ask: When allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"); (*Combs v. SafeMoon LLC*, No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409, at *12 (D. Utah Mar. 29, 2024).

[77] Docket No. 32 ¶ 117.

[78] Docket No. 41, at 13.

value of the investment and knew so because he intended to divert funds to his other companies.[79]

Considering other plausible, nonculpable explanations for Defendants' conduct,[80] the Court finds that Plaintiffs fail to meet the heightened pleading standard to allege scienter. While "scienter may be inferred from facts showing a motive for committing fraud and a clear opportunity for doing so,"[81] Plaintiffs do not allege scienter through motive. In contrast, Defendants contend that many of their statements, including those about profits from the investment, value of the property, timing of completion of the project, and their expertise in the area, can be explained by optimism that, at most, was negligent.[82]

Plaintiffs' assertion that Director Defendants planned to and eventually did take funds contributed by Plaintiffs shows scienter[83] misses the mark as Plaintiffs do not sufficiently support Director Defendants' state of mind when the statements were made. Plaintiffs' assertion regarding Jones' statement to induce additional investment suffers from the same defect. "These arguments amount to allegations of 'fraud by hindsight,' which does not constitute securities fraud."[84] Instead, the most reasonable inference from all the statements is that Director Defendants were overly optimistic about the project, their abilities, and the potential for return.

---

[79] Docket No. 32 ¶ 107.

[80] *Tellabs*, 551 U.S. at 323–24.

[81] *Grossman v. Novell, Inc.*, 909 F. Supp. 845, 851 (D. Utah 1995) *aff'd*, 120 F.3d 1112 (10th Cir. 1997) (internal quotation marks and citation omitted).

[82] *See Anderson*, 827 F.3d at 1238 ("The plaintiffs allege that [defendants] intentionally misrepresented or recklessly ignored economic realities. That is possible, but it is more probable that the [defendants] were overly optimistic and failed to give adequate weight to red flags, for the plaintiffs supply little reason to suspect malevolence rather than benign optimism."); *see* Docket No. 34, at 18.

[83] Docket No. 41, at 13.

[84] *Anderson*, 827 F.3d at 1247.

As such, Plaintiffs fail to meet the heightened pleading standard and the Court will dismiss the claim.

Plaintiffs ask the Court for leave to amend if the Court finds the facts alleged are insufficient to state a plausible claim under the Exchange Act. "[T]he district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."[85] Neither the Amended Complaint nor Plaintiffs' response indicates that permitting Plaintiffs to amend their Complaint a second time would yield a meritorious claim under the Exchange Act. Accordingly, the Court will decline Plaintiffs request to amend.

### D. Jurisdiction over remaining claims

Pendent personal jurisdiction often arises where, as here "one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."[86]

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided

---

[85] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2021).

[86] *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004); *see also IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.") (internal quotation marks and citation omitted).

that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.[87]

Here, all of Plaintiffs' claims arise out of the same nucleus of operative fact. Plaintiffs' claims are based on the alleged improper handling of Plaintiffs' funds and the improper management of the Company owned jointly by Plaintiffs and Director Defendants. However, now that the Court has dismissed the Exchange Act claim, the only remaining claims are state court claims.[88] And, as previously concluded, the Court does not have diversity jurisdiction over the parties.

Dismissal of the federal claim "does not deprive the Court of pendent personal jurisdiction over [Defendants] with respect to Plaintiff[s'] state law claims."[89] However, absent a showing that "the parties have already expended a great deal of time and energy on the state law claims . . . a district court should normally dismiss supplemental state law claims."[90] This case is in its early stages and the parties have not put significant time or effort into litigating the state law claims. As such, the Court will decline to exercise pendent personal jurisdiction over Defendants and dismiss the remaining claims without prejudice.

---

[87] *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citation omitted).

[88] The remaining claims are breach of fiduciary duty, waste, unjust enrichment, conversion, constructive trust, and fraudulent conveyance. Docket No. 32, at 29–35.

[89] *Goldberg v. Rome McGuigan, P.C.*, No. CV 20-9958-JFW(SKx), 2021 WL 3520725, at *4 (C.D. Cal. Apr. 23, 2021).

[90] *Botefuhr*, 309 F.3d at 1273; *see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988) (explaining that in the "usual case" a district court will or should dismiss state claims when "federal-law claims have dropped out of the lawsuit in its early stages").

Plaintiffs summarily request that the Court transfer this case to another district or grant discovery on the issues raised in the Motion.[91] The Court declines to grant leave for additional jurisdictional discovery as Plaintiffs do not show how it "would be productive or useful in determining the issue of jurisdiction."[92] Further, the Court declines to transfer this matter to another court as Plaintiffs also do not make such a motion and do not address whether it is in the interest of justice for the Court to do so.[93]

III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Docket No. 34) is GRANTED. It is further

ORDERED that Plaintiffs' Exchange Act claim is DISMISSED WITH PREJUDICE, the remaining claims are DISMISSED WITHOUT PREJUDICE.

DATED September 23, 2024.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[91] Docket No. 41, at 2, 16.

[92] *NovaCare, LLC v. SelectMark, Inc.*, No. 2:11-CV-349, 2011 WL 5574954, at *5 (D. Utah Nov. 16, 2011).

[93] *See* 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).